**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEN JOHANSEN on behalf of himself and others similarly situated, | )<br>)<br>) Case No. 1:15-cv-912 |
| Plaintiff, | )<br>) Hon. Richard Posner<br>) |
| v. | )<br>) |
| GVN MICHIGAN, INC. dba GLOBAL VACATION NETWORK | )<br>)<br>) |
| Defendants. | )<br>) |
| _____ | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS
CLAIMS AND TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, Ken Johansen ("Mr. Johansen") is a resident of Ohio whose phone number has long been listed on the National Do Not Call Registry (the "Registry"). Despite taking the affirmative step to inform telemarketers that his phone number is off limits, Mr. Johansen continues to receive unwanted calls from telemarketers. Defendant, GVN Michigan, Inc. ("GVN"), is an entity that operates travel membership clubs and promotes its services via telemarketing, including via pre-recorded message ("Robocall"). Mr. Johansen alleges in his Class Complaint that from October of 2014 through January of 2015 he received numerous telemarketing calls from GVN. These calls were sent to Mr. Johansen's cell phone, which is listed on the Registry, and were delivered via Robocall.

Thereafter, Mr. Johansen filed suit against GVN, on behalf of himself and all others similarly situated, and alleged that GVN's Robocall telemarketing campaign was in violation of the Telephone Consumer Protection Act. In response, GVN has filed the instant Motion to Strike Class Claims and To Dismiss (the "Motion"). In support, GVN asserts that the TCPA is

nothing more than a "money making vehicle for individuals and lawyers" (ECF #15: GVN Motion at pg. 8) which can *never* be certified under Rule 23 of the Federal Rules of Civil Procedure. GVN further contends that this Court should strike the plaintiff's class claims because remedial statutes "can be abused and perverted into money-making machines for individuals and lawyers." *Id.*[1]

For the many following reasons, and hollow rhetoric of counsel aside, GVN's arguments fail. The Motion to Strike and to Dismiss should be denied. Indeed, the Seventh Circuit has previously held that, "class certification is normal in litigation under § 227, because the main questions…are common to all recipients. *Holtzman, v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). This matter should be permitted to proceed efficiently through discovery and to class certification.

## I.  APPLICABLE TELEMARKETING LAW

### A.  *The TCPA's Strict Regulation of Telemarketing Via Pre-recorded Message*

In 1991, Congress enacted the TCPA in an effort to address certain telemarketing practices thought to be invasive of consumers' privacy rights. Although the TCPA imposed new restrictions on live telemarketers, it specifically imposed heightened restrictions on the widespread practice of telemarketing via unsolicited Robocall. The specific focus on Robocalls was intentional as Congress recognized that such a practice was more intrusive to the privacy concerns of the called party than live solicitations.

> It is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the

---

[1] GVN offers nothing to indicate that counsel in this case are somehow abusing the class vehicle.

> caller to feel the frustration of the called party, fill an answering machine tape
> of a voice recording service, and do not disconnect the line even after the
> customer hangs up the telephone. For all these reasons, it is legitimate and
> consistent with the Constitution to impose greater restrictions on automated
> calls than on calls placed by lived persons.

See *In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 2736, 2737, at para. 25 (April 17, 1992). In accord with Congress' specific intent, the TCPA prohibits advertising via Robocall except where a consumer has consented to receive the call. *See* 47 U.S.C. §227(b)(1)(A)(iii) (prohibiting Robocalls to cell phones and 47 U.S.C. §227(b)(1)(B) (prohibiting Robocalls to residential phone lines).

**B. *The TCPA Prohibits Telemarketing To Consumers Listed On The Registry***

In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the Federal Trade Commission ("FTC") adopted the Telemarketing Sales Rule, 16 C.F.R. § 310 ("TSR"). On January 29, 2003, the FTC amended the TSR to establish the DNC Registry. *See* 16 C.F.R. § 310. The DNC Registry permits consumers to express their preferences not to receive certain telemarketing calls by placing their phone number(s) on the Registry. The DNC Registry allows consumers to register any of their telephone number(s), including wireless numbers. As for consumer reaction to the DNC Registry, the FCC's Biennial Report to Congress on the Do Not Call Registry explains that;

> Americans continue to enthusiastically embrace the Registry. In the first four days
> following the launch of the Registry on June 27, 2003, more than 10 million
> numbers were registered. As of September 30, 2003, a total of 51,968,777
> telephone numbers had been registered. With each fiscal year, the number has
> steadily increased. By the end of FY 2010, the number of active registrations was
> 201,542,535. As of September 30, 2011, the Registry had 209,722,924 active
> registrations.

*Available at* http://www.ftc.gov/os/2011/12/111230dncreport.pdf.  In 2003, the FCC extended

the protections afforded by the DNC Registry to consumers who placed their cell phones on the

Registry.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, CG Docket No. 02-278, F.C.C. 03-153 at ¶¶ 34-36, 18 FCC Rcd 14014

(July 3, 2003).  A person whose number is on the DNC Registry, and who has received more

than one telephone call within any 12-month period by or on behalf of the same entity in

violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

### C. Burden of Proof As to Consent

In enacting the TCPA, Congress and the FCC, which interprets and enforces the statute,

also explicitly took steps to ensure that consumers could easily enforce the statute in an efficient

manner.[2]  For example, under the TCPA and FCC regulations, a telemarketer who claims it had

consent to send a pre-recorded message to a particular consumer bears the burden of proof, and

must maintain records that prove such a claim.  The FCC has cautioned that a telemarketer

claiming consent **"must be prepared to provide clear and convincing evidence of the**

**existence of such a relationship."**  In the Matter of Rules and Regulations Implementing the

Telephone Consumer Protection Act of 1991, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL

2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  The FCC has also noted:

---

[2]*Hooters of Augusta, Inc. and Sam Nicholson v. American Global Ins. Co. and Zurich Ins.*
272 F.Supp.2d 1365 (S.D. Ga. July, 2003) (concluding after reviewing the TCPA's
extensive legislative history that the TCPA is  a remedial statute); *Western Rim Investment*
*Advisors, Inc. et al. v. Gulf Insurance Co.,* 269 F.Supp.2d 836, 849-850 (N.D.TX. June,
TCPA is a remedial statute); *Bernstein v. Am. Family Ins. Co.,* 2004 TCPA Rep. 1268 (Ill.
Cir. Feb. 23, 2004) (concluding after reviewing the legislative findings relative to TCPA
that the Congressional purpose in enacting the TCPA was remedial).

3

In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission.

Id. at ¶46.

### D.  *TCPA Enforcement Via Class Action Is Widely Recognized*

Given the massive scope of illegal telemarketing previously recognized by Congress in implementing the TCPA, the relatively small statutory monetary recovery under the TCPA for each claim, and the simple elements to prove a TCPA violation, many consumers have sought to enforce their rights under the TCPA via class action. Nationwide trial courts have scrutinized and approved the use of the class action vehicle to combat illegal telemarketing.[3]  In 2013, the Seventh Circuit Court of Appeals noted that class certification of TCPA claims is "normal" because the main questions that arise in TCPA class actions are "common to all recipients." *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. Aug. 26, 2013).

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not its merits. *See Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  "While a complaint attacked by a

---

[3] *See e.g., The Savanna Group, Inc. v. Trynex, Inc.,* 2013 U.S.Dist. LEXIS 1277 (N.D.Ill. Jan 4, 2013); *Lee v. Stonebridge Life Insurance Co.,* 289 F.R.D. 292, 2013 U.S.Dist. LEXIS 19774 (N.D.Cal. Feb 12, 2013); *Saf-T-Gard Int'l v. Vanguard Energy Servs., 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012); Agne v. Papa John's Int'l, 2012 U.S. Dist. LEXIS 162088 (W.D. Wash. Nov. 9, 2012); Van Swed. Jewelers, Inc. v. 101 VT, Inc., 2012 U.S. Dist. LEXIS 133567 (W.D. Mich. Sept. 19, 2012); Sparkle Hill, Inc. v. Interstate Mat Corp., 2012 U.S. Dist. LEXIS 178793 (D. Mass. Dec. 18, 2012); Am. Copper & Brass, Inc. v. Lake City Indus. Prods., 2012 U.S. Dist. LEXIS 102207 (W.D. Mich. July 24, 2012); Reliable Money Order, Inc. v. McKnight Sales Co., Inc., 281 F.R.D. 327 (E.D. Wis. 2012) .*

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007) (citations omitted).  As the Seventh Circuit held:

> The Supreme Court has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court.

*EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (citation and quotation marks omitted).  That test is easily met here.

## III.  ARGUMENT

### A.  GVN's Arguments In Support Of Its Motion to Strike Class Claims All Fail

In support of its Motion to Strike Class Claims and to Dismiss, GVN asserts a litany of arguments typically espoused by telemarketers who are being held to account by consumers for their massive violation of telemarketing law.  First, GVN asserts the class definitions proposed in the Class Complaint are "overbroad." Second, GVN claims that some of the members of the class "lack standing."  Third, in an argument that typically is made by the telemarketer at the class certification stage, GVN claims the proposed classes cannot be certified due to individualized issues relating to consent.  Finally, not surprisingly, GVN claims that the TCPA should be enforced by consumers' one claim at a time and enforcement via the TCPA via class action is not "superior" to individual enforcement.

**1. The class does not include consumers who received calls on business lines.**

In support of the Motion, GVN first argues that the TCPA's prohibitions against telemarketing via Robocall and to numbers listed on the Registry do not extend to business lines. GVN claims that because the plaintiff's proposed class definitions do not explicitly carve-out business lines, they are "overbroad" and, as such, should be stricken. This argument fails for several reasons. First, the plaintiff has never claimed that business lines are part of the class. The TCPA's application to residential and cell phones is self-evident on the face of the statute the plaintiff seeks to enforce. *See* 47 U.S.C. §227(b)(1)(A)(iii) (prohibiting Robocalls to cell phones and 47 U.S.C. §227(b)(1)(B) (prohibiting Robocalls to residential phone lines); 47 U.S.C. §227(c) (prohibiting telemarketing calls to residential and cell numbers listed on the Registry). Second, that a class definition may be overbroad is not a reason to strike class claims. *See Chapman v. Wagener Equities, Inc.,* 747 F.3d 489, 492 (7th Cir. Ill. 2014) (J. Posner). Whether, in fact, an individual consumer has a valid claim is the issue to be determined after the class is certified. *Id.* A class member who does not have a right to assert a claim, however, would not be entitled to share in the damages awarded to the class by a judgment or settlement. *Id.* Accordingly, even if the class as defined is overbroad, such is not a reason to strike class claims.

Finally, trial courts have repeatedly recognized that modifying a proposed class definition is common in class action litigation because "[U]ntil the plaintiff's counsel becomes aware of which ground [in opposition to class certification] will be selected by the defendants, the plaintiff is uncertain how broadly to frame the initial brief in support of class certification." Alba Conte & H. Newberg, Newberg on Class Actions (4th ed. 2002) § 7.7 at 23. *See e.g., Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285 (2011) (recognizing that proposed class

6

definition can be modified in the TCPA context). To the extent this Court has any concern as to

the proposed class definitions, such can be addressed via a simple amendment to the class

complaint.

> **2. The plaintiff need not plead lack of consent as such is an affirmative defense the burden of which falls on GVN.**

In a similar over-breadth argument, GVN next contends that two of the proposed class

definitions are overbroad because the plaintiff does not allege that class members did not provide

GVN with their prior express consent to receive the unlawful calls at issue. First, this assertion

is factually wrong. Mr. Johansen's Class Complaint explicitly alleges that Mr. Johansen "brings

this suit under the TCPA, which specifically prohibits unsolicited pre-recorded voice calls." *See*

Doc. No. 1, Plaintiff's Class Complaint at "Preliminary Statement."

Second, Mr. Johansen need not plead that GVN lacked prior express consent to make the

telemarketing calls at issue in order to state a plausible claim for relief. Courts in this district

have repeatedly held that prior express consent, under the TCPA, is an affirmative defense for

which the defendant bears the burden of proof. *See Philip Charvat v. The Allstate Corp.*, 29

F.Supp.3d 1147, 1149 (N.D.Ill. March 5, 2014) (Bucklo, J.) (prevailing view in this district is

that "prior express consent" under the TCPA is an affirmative defense on which the defendant

bears the burden of proof; it is not a required element of the plaintiff's claim); (*Thrasher-Lyon* v.

Ill. *Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) (Castillo, J.) ("express consent"

is not an element of plaintiff's TCPA claim but is an affirmative defense for which the defendant

bears the burden of proof); *Sengenberger v. Credit Control Servs.*, No 09 C 2796, 2010 U.S.

Dist. LEXIS 43874, at *7-8 (N.D. Ill. 2010) (Zagel, J.) ("The defendant bears the burden of

proof with respect to 'prior express consent.'"). Similarly, courts in this district recognize that

7

the failure to "plead out" affirmative defenses is not an appropriate ground for dismissal at the pleadings stage because plaintiffs are not required to plead facts that anticipate and defeat affirmative defenses. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *see also Indep. Trust Corp. v. Stewart Info. Serv. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012).

GVN claims that the many courts that have recognized, in the context of the TCPA, that consent is an affirmative defense the burden of proof of which falls on the defendant are simply wrong. GVN argues that support for the proposition that the defendant bears the burden of proving consent in a TCPA case is limited to one FCC Order concluding that creditors making debt calls to consumers are responsible for satisfying the TCPA's consent requirements. *See In The Matter of Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 565, ¶ 10 (2008) (noting that in event of a dispute the creditor seeking to enforce a debt bears the burden to prove the debtor consented to the call for purposes of the TCPA. GVN claims, without explanation, that the FCC's burden instruction in this regard should be limited to the debtor/creditor context. GVN fails to offer any explanation as to why a consumer plagued with illegal telemarketing calls, and not the telemarketer itself, should bear the burden of establishing consent. It would seem that like a creditor calling to collect a debt, a telemarketer looking to sell product is similarly in the best position to maintain records to ensure that the consumers being called consented to such call. Accordingly, as a matter of policy, GVN's consent claim makes no sense.[4] Further, GVN's contention that support for the

---

[4] Of course, if GVN's argument is successful, and the Court were to conclude the burden of proof falls on the consumer, GVN will then claim that class certification should be denied because mini-trials will be required to ensure that each class member satisfies their consent burden.

proposition that the defendant bears the burden of proof is limited to one FCC Order in the

context of the debtor/creditor relationship is simply wrong. The FCC has long cautioned that a

telemarketer claiming consent **must be prepared to provide clear and convincing evidence**

**of the existence of such a relationship.** <u>In the Matter of Rules and Regulations Implementing</u>

<u>the Telephone Consumer Protection Act of 1991</u>, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL

2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted:

> In the event a complaint is filed, the burden of proof [as to whether prior
> express consent was obtained] rests on the sender to demonstrate that
> permission was given. We strongly suggest that senders take steps to
> promptly document that they received such permission.

<u>Id.</u> at ¶46. Most recently, in February of 2012, the Federal Communications Commission

reiterated that, specifically in the context of Robocall telemarketing:

> Finally, should any question about the consent arise, the seller will bear the burden
> of demonstrating that a clear and conspicuous disclosure was provided and that
> unambiguous consent was obtained.

*See* In the Matter of Rules and Regulations Implementing the Telephone Consumer

Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

Third, as recognized by the Seventh Circuit in *Chapman v. Wagener Equities, Inc.,* 747 at

492, *wh*ether, in fact, an individual consumer has a valid claim is the issue to be determined after

the class is certified. To the extent that GVN can demonstrate that they had prior express

consent in writing to telemarket to certain class members, those class members can easily be

removed from the class and, in any event, would not be able to recover in any class settlement or

judgment. Finally, to the extent the Court deems it necessary to explicitly state in the class

definitions that the proposed classes are limited to consumers who did not provide GVN with

9

their prior express consent to receive GVN telemarketing calls, such concern can easily be addressed via an amended class definition.

For all of these reasons, GVN's claim that the plaintiff bears the burden of proof of consent in a TCPA case fails.

### 3. That the classes proposed by plaintiff are limited by the applicable statute of limitations is self-evident.

GVN's final "over breadth" argument contends that some of the plaintiff's proposed class definitions do not explicitly limit the temporal scope to the statute of limitations applicable to the TCPA. The plaintiff does not dispute that the statute of limitations subject to TCPA claims is four years. *See* 28 U.S.C. § 1658. That the class definitions, themselves, do not all explicitly adopt the limitation set forth in the statute of limitations is of no import given the undisputed fact that a four year limitations applies to all class claims. Further, to the extent the Court requires each class definition to explicitly recite the statute of limitations which undisputedly applies to this case, such can be easily addressed via amendment.

### 4. GVN's "standing" arguments have no merit.

GVN next contends that because the classes are defined in an overbroad manner, they include consumers who do not have claims and, therefore, do not have "standing." At this stage of the proceeding, the only plaintiff whose "standing" is at issue is Mr. Johansen. There can be no legitimate dispute that Mr. Johansen received Robocalls from GVN while his telephone number was listed on the Registry. Mr. Johansen clearly has "standing" to pursue this case. As the proposed classes have yet to be certified, GVN's contention that future, potential class members may not have "standing" to assert a TCPA claim is mere rank speculation. In fact, GVN's standing argument in this regard is just a re-articulation of its prior "over-breadth"

argument.  Whether, in fact, class members have valid claims against GVN is the issue to be determined after the class is certified.  A recipient of a telemarketing call from GVN who does not have rights enforceable under the TCPA would not be entitled to share in the damages awarded to the class by a judgment or settlement.

### 5.  Consent issues do not predominate and are subject to common proof

Next, GVN argues at the Motion to Strike stage that the plaintiff will ultimately be unable to demonstrate at the class certification stage that demonstrating lack of consent for the telemarketing calls at issue will require individualized inquiry that will predominate over common issues.  GVN argues there is a "myriad"[5] ways in which a consumer may provide "prior express consent" to a telemarketer and, as such, class certification of apparently *any* TCPA claim is not feasible.

In October of 2013, however, the consent rules applicable to telemarketing calls made via Robocall was greatly simplified.  *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).  Prior to these amendments, a consumers consent to receive Robocalls could be obtained orally or in writing.  *Id.* at * 1838.  In addition, Robocalls to consumers with whom the caller had an established business relationship were also exempt from the scope of the TCPA.  In October of 2013, however, the new rules terminated the EBR exemption.  *Id.* at * 1846 (We conclude that the public interest would be served by eliminating the established business

---

[5] A common tactic. "Defendants attempting to avoid class certification will, almost exclusively, overwhelm a [trial] judge with the differences between each class member's case[,]" *Gulas v. Infocision Mgmt. Corp.*, 599 S.E.2d 648, 653 (W. Va. 2004) (Starcher, J. concurring). "It is akin to a judge being asked to look at a forest of oak trees and being told the difference between each tree: each tree has a different height, a different color, a different number of leaves, a unique number of branches, a wide variation in the number and size of tree rings, and so on." *Id.*

relationship exemption for telemarketing calls).  Instead, in order to telemarket via Robocall to

residential or cell telephone lines, a telemarketer first must obtain the recipient's prior express

consent in writing.  More specifically, the FCC's 2013 Order noted:

> Consistent with the FTC's TSR, we conclude that a consumer's written consent to
> receive telemarketing robocalls must be signed and be sufficient to show that the
> consumer: (1) received "clear and conspicuous disclosure" of the consequences of
> providing the requested consent, *i.e.,* that the consumer will receive future calls
> that deliver prerecorded messages by or on behalf of a specific seller; and (2)
> having received this information, agrees unambiguously to receive such calls at a
> telephone number the consumer designates. In addition, the written agreement
> must be obtained "without requiring, directly or indirectly, that the agreement be
> executed as a condition of purchasing any good or service." Finally, should any
> question about the consent arise, the seller will bear the burden of demonstrating
> that a clear and conspicuous disclosure was provided and that unambiguous
> consent was obtained.

*Id.* at * 1844.

GVN correctly notes that under the FCC's new consent rules, "prior express consent"

may be obtained by e-mail, website form, text message, telephone key press, or voice recording.

27 F.C.C.R. at 1843-44.  GVN, however, ignores that consent obtained in these manners first

must satisfy the requisites of the Electronic Signatures Act. *See* 15 U.S.C. § 7001 *et seq.*

Second, even where the requisites of the E-Sign Act are satisfied consent obtained via means

other than a signed writing, must be "clear and conspicuous" clearly noting that the consumer is

agreeing to receive telemarketing calls at a specific number.  *See* In the Matter of Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830

at 1844.

Simply put, unless GVN comes forward with written proof that class member's

consented to receive telemarketing calls, and that such written proof satisfies the above rigid

requisites of the FCC's amended "prior express consent" rules applicable to the TCPA, there

12

are no individualized issues of consent to even consider. Further, to the extent that GVN does bear its burden of proof and does come forth with such evidence, these consumers can easily be removed from the class or, obviously, would not be able to participation in any class settlement or judgment. It is also well recognized in this district that class certification in the TCPA context should not be denied on predominance grounds unless the defendant comes forth, at the class certification stage, with specific evidence to show that a significant percentage of the class consented to receive the calls at issue. *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) (citing cases) ("The rule that can be extracted from these cases is that issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving [texts] on their cellphone[s]").

Finally, it should be noted that ***all*** of the cases cited by GVN in support of its contention that consent issues in TCPA cases preclude class certification pre-date the FCC's October 2013 revisions to the TCPA consent rules and are therefore inapplicable. The lead case cited by GVN in support of its contention that issues of consent predominate in TCPA class actions, *Gene & Gene v. BioPay*, 541 F.3d 318, 327 (5th 2008), has also been repeatedly criticized by courts in this district, even prior to the FCC's revision of its consent rules.. *See, e.g., CE Design Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 599-600 (N.D. Ill. 2010) *vacated and remanded,* 637 F.3d 721 (7th Cir. 2011) (rejecting the reasoning of *Gene & Gene*, noting that "the weight of authority, particularly in this District, is to the contrary.").[6]

---

[6] The *CE Design* decision contains a string cite of additional cases rejecting the *Gene & Gene* notion that consent is an individual issue. *See CE Design Ltd.*, 271 F.R.D. at 600. The *CE*

As consent issues will not predominate in this case, particularly where the calls at issue were all made after the FCC's revisions to its consent rules which now require prior express consent to be in writing, GVN's Motion to Strike Class claims on predominance grounds relating to consent fails.

### 6. Class enforcement of the TCPA is superior to individual claims.

In its final argument, GVN claims that individual enforcement of the TCPA- and not enforcement via Rule 23- is the superior method for adjudicating TCPA claims. This final argument fails for several reasons. First, the TCPA contains no express prohibition prohibiting a consumer from enforcing the statute via class action. *Any* claim may be brought as a class action under Rule 23 unless *expressly* prohibited by Congress. The United States Supreme Court so held in *Califano v. Yamasaki,* 442 U.S. 682, 700 (1979) on remand *Yamasaki v. Harris,* 607 F.2d 329 (9th Cir. 1979), where it found class relief available under the Social Security Act where the statute contained "no *express* limitation of class relief." *Id.* at 699 ("We do not find in § 205(g) the necessary *clear* expression of congressional intent to exempt actions brought under that statute from the operation of the Federal Rules of Civil Procedure").

In support of its contention that TCPA claims cannot be enforced via class action, GVN cites to a small minority of trial court decisions that have refused to certify TCPA claims. Most telling, GVN ignores the fact that the Seventh Circuit Court of Appeals has already explicitly recognized not only that TCPA classes can be certified, but that certification of a TCPA class is "normal" because the main questions that arise in TCPA class actions are "common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. Aug. 26, 2013).

---

*Design* certification order was reversed solely based upon the credibility of the named plaintiff. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727 (7th Cir. 2011).

Further, completely absent from GVN's argument is any discussion of the trial and appellate

case law that has previously considered and rejected the claim that the TCPA cannot be enforced

via class action. *See* Kaufman v. ACS Systems, Inc., 2 Cal.Rptr.3d. 296, 327 (Court of Appeal,

Second District, Division 1, July 2003), *review denied,* 2003 Cal. LEXIS 7790 (rejecting

contention that individual enforcement of the TCPA superior to class enforcement *Landsman &*

*Funk PC, v. Skinder-Strauss Ass.,* 640 F.3d 72, 94 (3d. Cir. 2011) (Had Congress intended to

preclude aggregation of individual TCPA claims it could have so provided in the TCPA);

*Brandon M. Buslepp, on behalf of himself and all others similarly situated v. Improv Miami, Inc.*

*2012 U.S. Dist. LEXIS 62489,* (S.D.Fla) (May 4, 2012) (rejecting assertion that TCPA cannot be

enforced via class action); *Karen Little, LLC v. Drury Inns., Inc.,* 306 S.W.3d 577, 2010

Mo.App. LEXIS 12 (Court of Appeals of Missouri, Eastern District) (Jan. 21, 2010) (same); *St.*

*Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.,* 860 F.Supp.2d 920,  921-

922(E.D.Mo., March 14, 2012) (court "finds nothing" in TCPA's legislative history to exclude

enforcement of the TCPA via class action); *ESI Ergonomic Solutions, LLC v. United Artists*

*Theatre Circuit, Inc.,* 203 Ariz. 94; 50 P.3d 844; 2002 Ariz. App. LEXIS 109 at *19-20 (July

2002) (Congress did not preclude the use of class actions to obtain redress for violations of the

TCPA); *Core Funding Group, LLC v. James H. Young*, 792 N.E.2d 547; 2003 Ind.App. LEXIS

1301 fn 1 (July 2003) (noting that as the TCPA does not expressly exclude class actions, they are

presumably available as a method of redressing violations of the Act); *Accounting Outsourcing,*

*LLC et al. v. Verizon Wireless,* 2004 U.S.Dist. LEXIS 15427 (August, 5, 2004) (rejecting

assertion that TCPA cannot be enforced via class action).

Finally, class certification of TCPA claims is entirely consistent with the Seventh Circuit's recognition that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor". *See CE Design v. Beaty Constr., Inc.*, 2009 U.S. Dist. LEXIS 5842 (N.D. Ill. Jan. 26, 2009), *citing Mace v. Van Ru Credit Corp.,* 109 F.3d 388, 344 (7th Cir. 1997) (approving of TCPA enforcement via class action); *Sadowski v. Med1 Online, LLC, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008)* (granting TCPA class certification and acknowledging superiority of class versus individual enforcement).

### B. GVN's Motion To Dismiss Mr. Johansen's Claims Similarly Fails

Not only does GVN seek to strike all of Mr. Johansen's class claims, but it seeks to dismiss his individual claims as well. These arguments are readily dispatched. In this regard, GVN first curiously claims that Mr. Johansen has failed to plead that GVN made a Robocall to his "residential" line in violation of 47 U.S.C. 227(b)(1)(B). GVN Brief at 14-15. As explicitly noted in the Class Complaint, however, Mr. Johansen received the Robocalls at issue on his cell phone. *See* Class Complaint at ¶17, 21, 24. The prohibition against telemarketing via Robocalls to cell phones is set forth at 47 U.S.C. 227(b)(1)(A)(iii). GVN's contention that Mr. Johansen somehow failed to plead a violation of 227(b)(1)(B) fails as he has more than adequately pled a violation of 47 U.S.C. 27(b)(1)(A)(iii).

GVN also argues that Mr. Johansen has failed to adequately plead a violation of 47 U.S.C. 227(c), which prohibits telemarketing to consumers listed on the DNC Registry. GVN

16

claims that Mr. Johansen's DNC Count should be dismissed because Mr. Johansen failed to explicitly plead that he used his cell phone as a residential telephone line. GVN incorrectly seems to believe that only "residential phone subscribers" are entitled to the protections of the DNC Registry. The FCC, however, long ago extended the protections afforded consumers by the DNC Registry to also include cell phones. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, F.C.C. 03-153 at ¶¶ 34-36, 18 FCC Rcd 14014 (July 3, 2003). Mr. Johansen alleges in his class complaint that he received multiple telemarketing calls from GVN on his cellular telephone that was listed, at the time, on the National Do Not Call Registry. As the protections afforded consumers by the DNC Registry are not limited to telephone lines subscribed "residential" but also extends to telephone lines subscribed to a wireless provider, Mr. Johansen has adequately pled a violation of 47 U.S.C. 227(c).

## IV.      CONCLUSION

For all of the above reasons, GVM's Motion to Strike and Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED,

PLAINTIFF,
By his attorneys,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Lauren E. Snyder (6293832) 1350
N. Wells Street, Apt. A214
Chicago, IL 60610
(419) 344-1146
lauren.elizabeth.snyder@gmail.com

Matthew P. McCue
The Law Office of Matthew P. McCue 1
South Ave, Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice Admission*

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice Admission*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2015, the foregoing was electronically filed with the

Clerk of Courts via the CM/ECF System, which will send notification to all parties of record.


/s/ Brian K. Murphy
Brian K. Murphy

19