1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
      KEN JOHANSEN, on behalf of      )
 4    himself and others similarly    )
      situated,                       )
 5                                    )  Docket No. 15 C 912
                   Plaintiff,         )
 6                                    )
            vs.                       )
 7                                    )
      GVN MICHIGAN,INC., doing        )
 8    business as GLOBAL VACATION     )
      NETWORK,                        )
 9                                    )  Chicago, Illinois
                                      )  June 5, 2015
10                 Defendant.         )  10:01 a.m.

11
                      TRANSCRIPT OF PROCEEDINGS - STATUS
12                  BEFORE THE HONORABLE RICHARD A. POSNER

13    APPEARANCES:

14    For the Plaintiff:        MURRAY MURPHY MOUL BASIL LLP
                                BY:  MR. BRIAN KEVIN MURPHY
15                              1114 Dublin Road
                                Columbus, Ohio  43215
16
      For the Defendant:        BARNES & THORNBURG LLP
17                              BY:  MR. MARK PAUL MILLER
                                One North Wacker Drive, Suite 4400
18                              Chicago, Illinois  60606

19

20

21
      Court Reporter:          KELLY M. FITZGERALD, RMR, CRR
22                             Official Court Reporter
                               219 S. Dearborn Street, Suite 1420
23                             Chicago, Illinois  60604
                               312-818-6626
24                             kelly_fitzgerald@ilnd.uscourts.gov

25
```

```
 1              THE CLERK:  15 C 912, Johansen v. GVN, for status.
 2              THE COURT:  Yes.
 3              MR. MURPHY:  Good morning, Your Honor.  Brian Murphy
 4   on behalf of the plaintiff.
 5              THE COURT:  I'm sorry.  Could you say your name
 6   again?  Brian --
 7              MR. MURPHY:  Brian Murphy.
 8              THE COURT:  Murphy, okay.
 9              And?
10              MR. MILLER:  Good morning, Your Honor.  Mark Miller
11   on behalf of the defendant.
12              THE COURT:  Okay.
13         So I have this, the motion to dismiss, so that -- is
14   there anything else you want to discuss besides the motion to
15   dismiss?
16              MR. MURPHY:  Well, Your Honor, the one issue
17   plaintiff would like to raise is we've been trying to have a
18   Rule 26 initial meeting of the parties so that we could get
19   discovery out.  The defendants -- there was some back and
20   forth in terms of who their trial counsel was going to be in
21   this matter.  We would like to have some sort of schedule from
22   the Court so that it will compel them to engage in the initial
23   meeting of the parties so that we can get discovery out.
24         In these cases, Your Honor, call records are very
25   important, and sometimes those call records are in the hands
```

1   of third parties and not the defendant.  And we're always very

2   sensitive to try to get on that as quickly as possible in the

3   discovery process so that those can be preserved and they

4   don't go away.  And we can't do that, obviously, until we have

5   the initial meeting of the parties.

6          THE COURT:  Mr. Miller.

7          MR. MILLER:  Your Honor, Mr. Murphy is talking about

8   a discussion he had with a different lawyer who was supposedly

9   going to come in, but he's not coming in.  So this is the

10  first time we've talked about it.

11         My position is I would like to have a ruling on the

12  motion to dismiss before we have the Rule 26 conference.  I

13  think our Rule 26 conference should be guided by a valid

14  complaint, if one can be stated, and -- because that's going

15  to guide the discovery.

16         So I think we need to have that ruling first and then

17  have the Rule 26 conference.

18         MR. MURPHY:  And, Your Honor, my belief is that, you

19  know, filing a motion to dismiss does not come with an

20  automatic stay of discovery.  And so, you know, they

21  haven't -- they haven't formally asked for a stay of discovery

22  before now.  And I just don't think that it's appropriate to

23  sort of -- particularly here, Your Honor, where these call

24  records can go away in an instant.  You know, a lot of them

25  are electronic.  And so we would like to be able to at least

1    get -- you know, to at least be able to pursue those call

2    records so --

3              THE COURT:  Well, I'm expecting to rule on the motion

4    now, today, this morning, okay.

5              MR. MILLER:  Okay.

6              THE COURT:  Will that take care of your problem?

7              MR. MURPHY:  Yes.

8              MR. MILLER:  I think so.

9              THE COURT:  Okay.  All right.  So we discussed the

10   motion to dismiss?

11             MR. MILLER:  Sure.

12             THE COURT:  Okay.  So, Mr. Miller, what's your

13   strongest argument for dismissal?

14             MR. MILLER:  Well, Your Honor, I think the strongest

15   argument is really that the plaintiff has failed to state just

16   a simple cause of action for himself for violation of a TCPA.

17   He does not allege how it was that he was able to identify the

18   first caller as GVN.  He does not identify how he was able to

19   identify the second caller as GVN, except that he says that

20   after the second call, I pressed 1 in response to some sort of

21   prompt, and that later in the day, he got a call from somebody

22   identifying themselves as GVN.

23             Interestingly, later in describing other live calls

24   he received, he does recite the phone numbers.  You know, it's

25   on his cell phone, so you would be able to see on your cell

1    phone what you -- who the caller is, but he doesn't recite

2    that phone number for the first two calls.  And there is

3    simply no factual basis for his assertion that the first two

4    calls were from GVN.  He has no -- doesn't identify what the

5    phone number is.  He just doesn't allege anything other than

6    the formulaic, I got a call.  And that's obviously a very

7    important element of a TCPA case, you know, what phone number

8    did you receive a call from and how do you know that the

9    person who called you was this person.

10          So you have that.  You have --

11          THE COURT:  Well, you have records, don't you?

12          MR. MILLER:  Well, I don't know if we do have records

13    or not because these companies hire marketing companies who

14    then hire marketing companies, who hire marketing companies to

15    establish leads for -- for our company.  And, you know, that's

16    kind of like asking us to prove the negative.  I mean, are we

17    supposed to go to every conceivable company that could have --

18    that one of our subcontractors could have hired out -- I mean,

19    there could literally be dozens of them -- and ask them for

20    all their records?  I think that's an incredibly heavy burden,

21    especially in an age where cell phone --

22          THE COURT:  I don't understand that.  If you call

23    them directly, then, you know, you would have a record, right?

24          MR. MILLER:  If GVN called directly --

25          THE COURT:  Right.

```
 1                MR. MILLER:  -- then --

 2           THE COURT:  But you can't, by infinite

 3   subcontracting, make it impossible for anyone to figure out

 4   whether you are behind these calls.

 5           MR. MILLER:  Well, I don't think that it's the

 6   infinite subcontract.

 7           THE COURT:  That's how you described it.  You say you

 8   contracted out to someone.  That person has a subcontractor.

 9   You can't trace it.  That sounds as if you're hiding your

10   responsibility for making those phone calls.  No way you're

11   getting away from that.

12           MR. MILLER:  Right.  And I'm not attempting to do

13   that.

14           THE COURT:  Well, then you find the records, right?

15   You're responsible for anything your subcontractors do.

16           MR. MILLER:  Well, I think there's some case law that

17   really -- we get into the whole question of the responsibility

18   under the agency laws.  And I think there's an open question

19   about that, to be honest with you.

20           THE COURT:  What do you mean by agency laws?

21           MR. MILLER:  Under the TCPA and the cases

22   interpreting it, if we didn't make the calls, and I don't

23   believe that we ever did, from what I understand about the

24   case thus far, there is a question as to whether, if a

25   subcontractor or subcontractor's contractor made that call,
```

1    whether we bear responsibility for it.  There's all the

2    agency --

3              THE COURT:  You do.

4              MR. MILLER:  -- issues about control.

5              THE COURT:  You do.  You do.  I mean, it would be

6    ridiculous otherwise, ridiculous.  You are responsible for the

7    calls made on your behalf, whether made by your employees,

8    your contractors, your subcontractors, your

9    sub-subcontractors.

10             Now, if it turned out that they had acted, you know,

11   contrary to your instructions, you might have a remedy against

12   them.  But you are responsible to the victims of calls made on

13   your behalf by companies with which you have contracts.

14   Otherwise you make it impossible for the plaintiffs.  Then

15   they have to track down all this indefinite number of

16   subcontractors.

17             MR. MILLER:  Well, Your Honor, I believe that the

18   plaintiffs have at their -- they have the ability to issue

19   Rule 45 subpoenas to subcontractors.  I mean, they have other

20   tools at their disposal.

21             THE COURT:  Yeah, but these are burdensome, and I

22   don't like the idea of your being able to subcontract your

23   liability.

24             MR. MILLER:  Well, I think it remains to be seen if

25   these calls were made in the first place, if they were even

1    made by GVN or someone acting on GVN's behalf, because they

2    haven't alleged any basis on which they could know that.  I

3    think at a very minimum they have to allege more than just,

4    you know, parroting the statute.  They have to allege some

5    factual basis for knowing that GVN called them.

6            THE COURT:  So this is Johansen we're talking about;

7    is that correct?

8            MR. MILLER:  Yes.

9            MR. MURPHY:  Yes.

10           THE COURT:  Now, didn't Johansen receive or say he

11   received an advertisement about these vacation homes?

12           MR. MILLER:  No, sir.  What he said was he received

13   the first call -- he got a call.  He doesn't say who it was

14   from, and he doesn't say that that caller identified

15   themselves as GVN.

16           Then he got a second call.  Again, he doesn't

17   identify where that call came from, and he doesn't say that

18   that caller identified themselves as GVN.

19           In response to the second call, he pressed 1, which,

20   according to his complaint, meant that he was indicating

21   interest in the product.  And after he pressed 1, then he got

22   a call from GVN I think the same day.

23           But we have no way of knowing, based upon his

24   complaint, how it was he was able to identify the first two

25   callers as GVN.  And once he's pressed 1 and indicated his

1    interest in the product, well, then we've got whole 'nother

2    universe of issues and --

3              MR. MURPHY:  No.

4              MR. MILLER:  -- and -- things going on there because

5    under the TCPA, it's the second call that is the one that

6    subjects you to liability.  And if he can't even allege --

7    it's not that difficult, I don't think, for him to allege in

8    his complaint either the cell phone number -- the phone number

9    of the entity that called him or that during the call that

10   party identified themselves as GVN.  And he didn't do it,

11   which is particularly odd because later on in his complaint,

12   when he's talking about the other calls, he does allege what

13   number called him.

14             So I have a real problem with somebody being able to

15   just say, hey, I got two calls.  I don't really know who

16   they're from.  But then I got a call from GVN, so I guess the

17   first two calls must have been from GVN.  GVN, I'm suing you

18   for potentially millions of dollars.  I want you to produce

19   all your records, go to all your subcontractors --

20             THE COURT:  He is not suing for millions of dollars.

21             MR. MILLER:  Your Honor, there is potentially

22   millions of --

23             THE COURT:  He is not looking for millions of dollars

24   for himself.

25             MR. MILLER:  Not for himself, correct.

1          THE COURT:  Right, okay.

2          So, Mr. Murphy, do you have a comment on it?

3          MR. MURPHY:  Sure, Your Honor.

4          I mean, let's be clear.  When it comes to these

5  caller ID numbers, when they engage in this kind of

6  telemarketing, they often use sub and subcontractors.  Those

7  people are using SpoofTel or illegitimate caller ID

8  information.  It's very difficult to try to track these calls

9  back to the source sometimes.

10          And so I would submit, Your Honor, that if -- for

11  instance, when I get a robocall to a cell phone, it's a

12  violation of touting, you know, vacation packages and services

13  like that.  When Mr. Johansen pressed 1, he was pressing 1 to

14  try to figure out who the source of that call was.  That's the

15  only ability he had, and that when, in a matter of an hour, he

16  gets a call from somebody from GVN, who he has never sort of

17  dealt with before trying to sell him vacation products, I

18  would submit, Your Honor, that that provides me a good-faith

19  basis to assert that GVN was the source of those calls.  And

20  if they're not, through the course of discovery, they won't be

21  subjected to liability, but this is exactly the kind of

22  structure that they engage in.  Of course when they send --

23  they know it's illegal to send you a robocall.  So when they

24  send you the robocall in the vacation context or the security

25  system context, they don't say who it is.  They try to be very

1    vague and ambiguous about it.

2         But I would submit, Your Honor, that we did a factual

3    investigation to make sure we knew we met our obligations as

4    counsel to make sure that we had the right defendant, and we

5    did that.  And the facts laid out in the complaint are

6    sufficient to lay out a claim that survives a motion to

7    dismiss, Your Honor.  Again, if this is really somebody who

8    was calling to try to sell GVN services without their

9    knowledge and, you know, against their directive, well,

10   discovery will bear that out, and they won't have any

11   liability.  But as a plaintiff, it's very difficult, when you

12   have these telemarketing companies who are engaged in multiple

13   levels of subcontractors, and knowing what they're doing is in

14   violation of the law, they do things to obfuscate what they're

15   doing.  And so I would submit --

16        THE COURT:  Now, what discovery would you propose to

17   conduct to see whether those first two calls were on behalf of

18   GVN?

19        MR. MURPHY:  Well, Your Honor, generally what we

20   would do is we try to find out from GVN who are the

21   subcontractors that they use or subagents that they use to

22   telemarket on their behalf.  And then we would issue subpoenas

23   to those telemarketers to try to figure out what phone

24   numbers, what numbers are they calling from, what numbers are

25   they calling to, and, you know, how is it that these calls

1    generated to Mr. Johansen.  Quite honestly, Your Honor, we've
2    been through this many times before.
3              THE COURT:  Do they keep records of their calls?
4              MR. MURPHY:  They do, Your Honor.  Oftentimes what
5    will happen is particularly in the robocall environment,
6    they'll have systems where -- because here's what happens:
7    They need to prove to their client, their customer, that they
8    made these calls, that they delivered these messages, that
9    they generated these leads.  And so that's why they'll
10   maintain those records, is because they need to prove to GVN
11   that they're the ones who called Mr. Johansen that led to him
12   signing up for their service so that they get paid.  And so
13   it's our experience that, Your Honor, they're usually, quite
14   honestly, very robust call records, sometimes even including
15   complete call recordings of, you know, every robocall that was
16   made to a consumer.
17             MR. MILLER:  Your Honor, I also want to mention
18   that --
19             THE COURT:  Mr. Miller.
20             MR. MILLER:  -- the other problem, the other deficit
21   with the plaintiff's complaint, is that they -- he hasn't
22   alleged that he did not give consent, and that is a
23   requirement under -- for stating a TCPA cause of action, the
24   lack of prior consent, whether it's prior express consent
25   before October 2013 or prior express written consent after

1   October 2013.  And that's pervasive not only -- that's

2   important not only because of his individual claim but also

3   because that entire issue pervades every aspect of his class

4   action allegations, which makes it impossible for there to be

5   commonality, predominance.  I mean, that raises all those

6   kinds of issues in the class action complaint.

7           And one of the problems I have here is that somebody

8   can, on such thin allegations, attempt to state a class action

9   where they are seeking to recover millions of dollars,

10  especially in the face of a statute where it's clear that

11  consent is key.  And with all the different ways there are of

12  providing consent now, you know, by telephone --

13          THE COURT:  Well, you're mixing up your objections to

14  the complaint.  Your objections to class action are separate.

15          MR. MILLER:  Well, they're separate, but we also

16  filed a Rule 12(f) motion to strike the class action

17  allegations precisely because of the inherent problems with

18  trying to state a class action under these circumstances,

19  especially given the fact that here we have a plaintiff who

20  hasn't alleged that he didn't give consent and also has a

21  pretty particular fact pattern, where he pressed 1 after the

22  second call, not knowing who the first two callers are.

23          So I think it's a case that cannot be certified as a

24  class, if we get that far, and there are district courts who

25  have, without hesitation, in the right case, stricken the

1    class action allegations at the outset of the case.  And I

2    think this is one of those circumstances calling for that.

3              MR. MURPHY:  Your Honor, if I might.

4              THE COURT:  Yeah.

5              MR. MURPHY:  Consent is an affirmative defense.  It's

6    pretty clear in this district that it's an affirmative

7    defense.  It's not something that I have to negate in my

8    allegations.

9              Furthermore, we did -- in fact, if you read our

10   complaint and our preliminary statement, we talk about

11   alleging that these were unsolicited calls.  And I would

12   submit that when I say something is unsolicited, implicit in

13   that is that I did not give consent to receive those calls.

14             And so, Your Honor, again, when it comes to striking

15   the class allegations, this is, you know, a classic example, I

16   think, of they want to try to strike the class allegations

17   because they can promise you what's going to come next, which

18   it would be, you know, they would try to make a Rule 68 offer

19   of judgment to try to pick off the plaintiff.  I would submit

20   that there's nothing in here that hasn't been decided time and

21   time again that these are appropriate class allegations.  If

22   they have proof of consent for some members of the class, the

23   appropriate time to deal with that is at the time of or after

24   a motion for class certification.  It's certainly not at the

25   motion to dismiss stage.  And I think we don't have an

1   obligation to dispute every potential affirmative defense they

2   may have in filing our complaint.

3          THE COURT:  So, Mr. Miller, do you have a second best

4   argument now?  You gave the best argument.  Because you have

5   several grounds that you have asked for dismissal.

6          MR. MILLER:  Yeah.  Well, the classes that the

7   plaintiff attempts to state are overly broad.  The classes are

8   not limited to people who didn't give consent.  The classes

9   are not limited to folks who were called within the last four

10  years, which is the statute of limitations under the TCPA.

11  And the classes are not limited to residential customers who

12  are the only people protected by the TCPA.  So in my mind

13  right there --

14         THE COURT:  But, again, these are points about the

15  class action, not about the complaint.

16         MR. MILLER:  Okay.  Your Honor, no.  I mean, I've

17  stated them all.  I think under -- I'm not a real fan, by the

18  way, of citing *Twombly* and *Iqbal* because I think they get

19  overused.  But I think this is a good and very appropriate use

20  of *Twombly* and *Iqbal* because there are a pretty simple set of

21  elements of a TCPA case, but the plaintiff hasn't stated them.

22  And maybe the plaintiff can state them, but they haven't done

23  it yet.  And I think until they do so, I don't think they have

24  a complaint.

25         THE COURT:  Now, what are the elements you're talking

1    about?

2         MR. MILLER:  The elements of a TCPA class action --

3    or cause of action are -- hang on.  I just want to be sure I

4    quote them correctly.

5         All right.  The elements of a TCPA class action -- or

6    claim, I'm sorry -- are that the defendant called a cellular

7    telephone number using an automated -- automatic telephone

8    dialing system and without the recipient's prior express

9    consent.  And the plaintiff hasn't alleged that, that these

10   calls were made without his prior express consent.  And given

11   the fact that under federal law you can consent by a

12   telephone -- pressing a key on a telephone, responding to an

13   e-mail, responding to a text, voice -- some sort of voice

14   affirmation, either with an entity or one of its affiliated

15   companies, that's a really important element.  That's a really

16   important element.  And I think at the very least the

17   plaintiff ought to be required and the cases say the plaintiff

18   is required to plea that.

19        Now, there are some cases which say, well, no, that's

20   more of an affirmative defense, but those cases are based upon

21   an FTC decision that was specifically about the

22   creditor/debtor relationship.  And that creditor/debtor

23   relationship and those attributes which pertain to a different

24   FCC exception to the TCPA laws for debtors, creditors, for

25   folks trying to collect on a debt, don't have any application

1  in this circumstance.

2        MR. MURPHY:  Your Honor, in this district, *Charvat v.*

3  *Allstate*, 29 F. Supp. 3d 1147, it's a TCPA case, said very

4  specifically, you know, affirmative defense is not an element

5  of plaintiff's claim.  Consent is an affirmative defense.

6        And I would go back to, Your Honor, we don't even

7  need to get there because when I allege something is

8  unsolicited, to me that says that I didn't give consent.  I

9  don't think there's -- you know, this is really I think much

10 ado about nothing in terms of if they claim -- this is real

11 simple, too, Your Honor.  If they have the necessary consent

12 for our client, once the motion to dismiss is decided, they

13 certainly haven't provided it to us yet.  I would have thought

14 as soon as I filed a complaint, if the defendant had prior

15 express consent of my client, they would produce that pretty

16 quickly.  And as a lawyer, I would take that into account on

17 what to do next.  They don't have any evidence that they, in

18 fact, have such a thing.

19       So I think we've adequately pled a TCPA claim.  And

20 to the extent they have an affirmative defense that they want

21 to prosecute, they certainly are free to do that.

22       MR. MILLER:  Your Honor --

23       THE COURT:  Mr. Miller, what's the difference between

24 unsolicited and lack of --

25       MR. MILLER:  Well, in the first place, I'm trying to

1  find where they allege in their complaint that the calls were

2  unsolicited.

3          MR. MURPHY:  It's in the very introduction to the

4  complaint, the preliminary statement.

5          MR. MILLER:  Someone is going to have to point that

6  out to me.

7          MR. MURPHY:  Your Honor, we say they operate a series

8  of travel memberships.  They contacted plaintiff on his

9  cellular telephone using illegal automated equipment and

10 prerecorded technology, despite the fact that the plaintiff

11 was on the National Do Not Call Registry.  Your Honor, that, I

12 believe, would be enough to express that the plaintiff did not

13 consent to these calls.

14          Plaintiff goes on, in order to redress these

15 injuries, plaintiff, on behalf of himself and the proposed

16 class of similarly situated individuals, bring this suit under

17 the TCPA, which specifically prohibits unsolicited prerecorded

18 voice calls.

19          MR. MILLER:  But, Your Honor, where has he -- all

20 he's saying is that the statute prohibits unsolicited calls.

21 We get that.  But where has he alleged that the calls made to

22 him by GVN were unsolicited?  It's not here.

23          MR. MURPHY:  Your Honor, I would submit --

24          MR. MILLER:  And he has not pled a cause of action,

25 by the way, under the Do Not Call Registry.  Or maybe he has.

1    It's kind of hard to tell because all -- if you look at his

2    complaint, when you get to his personal counts, all he says is

3    plaintiff incorporates all the paragraphs before this, and

4    that constitutes a violation of the TCPA.  I mean, how about a

5    little more specificity.  Is he talking about the Do Not Call

6    regulations?  Is he talking about that you called me on a cell

7    phone?  Is he talking about you called me on a residential

8    business number or a landline?  On top of which he's got

9    separate counts, individual counts, for willful versus

10   negligent violation of the TCPA, and willfulness is just a

11   measure of damages.  It's not a separate cause of action.

12           So there are a lot of problems with this complaint.

13   And, frankly, it's not that difficult, with all due respect, I

14   mean it in the nicest way --

15           THE COURT:  I don't understand.  He receives

16   prerecorded messages, and he doesn't know who it is, so he

17   presses 1.  And then he receives a call from GVN; is that

18   correct?

19           MR. MURPHY:  Yes, Your Honor.

20           THE COURT:  Well, obviously then the call came from

21   GVN or one of its subcontractors.

22           MR. MILLER:  Your Honor, with all due respect, I

23   don't see how that follows.

24           THE COURT:  Oh, come on.

25           MR. MILLER:  I just don't.

1          MR. MURPHY:  There's a reason --

2          THE COURT:  Well, you're wrong, because you receive a

3    call.  You don't know what it's from.  You press 1 to try to

4    find out who it's from.  And the next thing you know, you get

5    a call --

6          MR. MURPHY:  Regarding the same topic, Your Honor.

7          THE COURT:  -- from GVN, right?

8          MR. MURPHY:  Right.

9          THE COURT:  So put two and two together and you get

10   four, right?

11         MR. MILLER:  I don't --

12         THE COURT:  What do you think happened?  Why did GVN

13   make this call to him?

14         MR. MILLER:  Your Honor, I don't know.  I don't know

15   that GVN called him.

16         THE COURT:  Ever?

17         MR. MILLER:  I don't know that anybody that was

18   working for GVN or was their agent called him.  I don't have

19   any --

20         THE COURT:  I mean, the allegation is GVN placed

21   another call to a cellular phone claiming to be from GVN

22   offering the plaintiff a free vacation.  Now, that's an

23   allegation.  Do you have evidence that that's false?

24         MR. MILLER:  Well, this -- I don't -- in the first

25   place, he's talking about what happened after he pressed 1 --

```
 1                 THE COURT:  Yes, but he says --

 2                 MR. MILLER:  -- which to GVN indicates --

 3                 THE COURT:  -- he pressed 1 in order to find out who

 4      was pestering him.  That's his allegation.  Now, he may be

 5      wrong.  He may be lying.  But that's all you need in a

 6      complaint, is allegations.

 7                 MR. MILLER:  Whatever happens after he presses 1,

 8      he's already given his consent.

 9                 THE COURT:  Oh, come on.  If his purpose in pressing

10      1 --

11                 MR. MILLER:  It doesn't matter --

12                 THE COURT:  Don't interrupt me.

13                 If his purpose in pressing 1 is simply to find out

14      who's calling him, he's not giving consent to anything.

15                 MR. MILLER:  Under the ESIGN Act, he has given

16      consent.

17                 THE COURT:  Look, what you're saying is totally

18      illogical.  He alleges that he pressed it not because he

19      wanted to do business with GVN but because he doesn't know who

20      is calling him.  Now, if that's true, right, that has nothing

21      to do with consent.  Now, how can you say it's false?

22                 MR. MILLER:  I don't know whether or not he pressed

23      1.  I don't know that.  But I do know --

24                 THE COURT:  It's an allegation.

25                 MR. MILLER:  I --
```

1          THE COURT:  So what are you going to do about that?

2     You don't seem to understand what a pleading is about.  A

3     pleading is about allegations.  It's not about proof.

4          Look, your motion is frivolous.  I am denying it.  I

5     will explain why I'm denying it.  So let's go on -- so what's

6     next?  Okay.  What comes next in this proceeding?  We're

7     through the motion.

8          MR. MURPHY:  Your Honor, I think we would like to set

9     a case schedule so that we can -- again, so that we can have

10    this Rule 26 conference and we can get moving on discovery as

11    quickly as possible, Your Honor.

12         THE COURT:  Okay.  Well, what are you suggesting

13    about a schedule?

14         MR. MURPHY:  Your Honor, I think typically we would

15    be looking for, you know, six to seven months for fact

16    discovery on that just because generally we can get our

17    discovery out pretty quickly, subpoenas out pretty quickly,

18    but sometimes when we're dealing with subcontractors and

19    sub-subcontractors, we don't know.  They may be New Jersey.

20    They may be in California, and sometimes that process takes

21    longer than 30 or 60 days.  But we generally think, you know,

22    in the six- to nine-month range for fact discovery is all we

23    typically need in these cases, and then, you know, setting a

24    class certification schedule for sometime thereafter.

25         MR. MILLER:  That sounds fine, Your Honor.

1          THE COURT:  Mr. Miller?

2          MR. MILLER:  That sounds fine.

3          MR. MURPHY:  Your Honor --

4          THE COURT:  Is there anything else I should do except

5   set that schedule?

6          MR. MURPHY:  Your Honor, there may be -- as I think

7   about it, in some instances, we may need expert discovery in

8   these cases depending on the technology that's used.  And so,

9   you know, preferably there would be some short provision for

10  expert discovery at the conclusion of fact discovery.

11         THE COURT:  Have you had any settlement discussions?

12         MR. MURPHY:  No, Your Honor, not at this point.

13         MR. MILLER:  No, Your Honor.

14         THE COURT:  I mean, these cases are almost always

15  settled.

16         Is there anything else you want to discuss?

17         MR. MURPHY:  Not from the plaintiff, Your Honor.

18         MR. MILLER:  No.  I mean, I think in terms of

19  settlement, one of things that may be an impediment is that,

20  as Your Honor probably knows, the Supreme Court has agreed to

21  rule on whether -- if an offer of judgment is made, whether

22  that will essentially moot the class proceedings, but they

23  won't be deciding on that until next June sometime.

24         MR. MURPHY:  Yeah.  And, Your Honor, I would argue in

25  this district, the law is pretty clear in terms of what the

1    Supreme Court may or may not decide.  There are other issues

2    in that cert that may have nothing to do with that.  And I

3    would submit that that's why we have every incentive and want

4    to move this case along as quickly as possible, because, you

5    know, defendants may think that the law is going to move in

6    their favor, but I would submit if it doesn't --

7            THE COURT:  This is where Supreme Court has granted

8    cert in the case?

9            MR. MURPHY:  Well, it's *Campbell Ewald* I believe is

10   the name of it.

11           THE COURT:  What is it called?

12           MR. MURPHY:  *Campbell Ewald*.

13           THE COURT:  *Campbell*?

14           MR. MURPHY:  I think that's it, right?

15           MR. MILLER:  I don't want to --

16           MR. MURPHY:  And, Your Honor, it has to do with

17   Rule 68 offers of judgment in the class context.

18           THE COURT:  The picking off problem?

19           MR. MURPHY:  Exactly, exactly.  But it's in a case in

20   California where there are also sort of sovereign immunity

21   issues because the TCPA claim in that case involved the Navy.

22   And so there are three questions up for cert.  One of them is

23   the sovereign immunity question, which would sort of -- it may

24   not get to what everybody thinks they're going to get to.

25           THE COURT:  Anything further?

1          MR. MURPHY:  Not from plaintiff, Your Honor.

2          THE COURT:  Well, thank you very much, both.

3          We'll be in recess.

4          (Which were all of the proceedings had.)

5

6

7     *     *     *     *     *

8

I certify that the foregoing is a correct transcript from the
9  record of proceedings in the above-entitled matter.

10

/s/ Kelly Fitzgerald                    July 14, 2015
11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25